No. 9686.

## CAVANAUGH ET AL. *v.* SMITH.

JUDGMENT.—*Jurisdiction.*—*Presumption.*—*Service of Summons.*--*Collateral Attack.*—When the record is silent upon the subject of the service of process, jurisdiction of the person will be presumed in a collateral attack upon the judgment, and this rule sustains the jurisdiction if there is any service of process shown, although it may be irregular and defective.

SAME.— *Void and Erroneous Judgments.*—Where it is made to appear, in a proper manner, that there was no jurisdiction of the person, the judgment will not be simply erroneous, but absolutely void, and a merely erroneous judgment can not, but a void judgment can, be collaterally attacked.

SHERIFF'S RETURN.—*Fraud.*— *Divorce.*—*Alimony.*—Where a judgment is obtained for alimony against a non-resident, without notice, upon a false return of service of process procured by the fraud of the plaintiff, the judgment is void and may be attacked collaterally, the return not being conclusive.

FRAUDULENT CONVEYANCE.—*Notice.* — *Volunteer.*—In a suit to reach real estate conveyed to a volunteer, to satisfy a judgment, it is immaterial whether either the grantor or grantee had or had not notice of the judgment.

EXECUTION.—*Property Purchased with Pension Money.*—Property purchased with pension money is liable to sale on execution.

From the Bartholomew Circuit Court.

*G. W. Cooper* and *A. Burns,* for appellants.

*N. R. Keyes,* for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that she recovered a decree of divorce against Virgil P. Cavanaugh

Cavanaugh *et al. v.* Smith.

and judgment for $300 alimony, in the Bartholomew Circuit Court; that Cavanaugh afterwards fraudulently conveyed the land described in the complaint to Robert Brown, who reconveyed to the appellants. The complaint contains the necessary allegations to entitle the appellee to the relief sought, the overthrow of the alleged fraudulent conveyance, and no question is made upon it. The first paragraph of the answer avers that Virgil P. Cavanaugh was not a resident of the State of Indiana when the action was commenced against him by the appellee, nor for two years prior to that time, and did not become a resident of this State until some years after the judgment was rendered; that he had no notice of the pendency of the action; that none was given by publication; that appellee knew that he was not a resident of the State; that with this knowledge she fraudulently procured the sheriff to leave a copy of the summons at the residence of one Henry McKendree, which was not at the time and never had been the residence of the appellant; that the appellee procured the sheriff to make a return that he had served the summons by leaving a copy at the last and usual place of residence of the appellant.

We agree with the appellee, that, where the record is silent upon the subject of the service of process, jurisdiction of the person will be presumed in all cases where the attack upon the judgment is a collateral one. *Dwiggins* v. *Cook*, 71 Ind. 579; *Waltz* v. *Borroway*, 25 Ind. 380; *Hawkins* v. *Hawkins' Adm'r*, 28 Ind. 66. The rule sustains the jurisdiction if there is any service of process although it may be irregular and defective. *Muncey* v. *Joest*, 74 Ind. 409; *McAlpine* v. *Sweetser*, 76 Ind. 78; *Hume* v. *Conduitt*, 76 Ind. 598; *Stout* v. *Woods*, 79 Ind. 108.

It is, as appellee asserts, the general rule that the return of the sheriff to the summons concludes the parties. *Clark* v. *Shaw*, 79 Ind. 164; *Splahn* v. *Gillespie*, 48 Ind. 397; *Stockton* v. *Stockton*, 59 Ind. 574.

This case does not fall within any of the rules we have

stated.   The answer does not attack the judgment set forth
in the complaint on the ground of irregularity or of error,
but on the ground that the court had no jurisdiction of the
person of the defendant.   It is true beyond all question, that
where it is made to appear in a proper manner that there was
no jurisdiction of the person, the judgment will not be simply
erroneous, but absolutely void. *Mitchell's Adm'r* v. *Gray*, 18
Ind. 123;  *Horner* v. *Doe*, 1 Ind. 130.

Where a judgment is erroneous it can not be attacked col-
laterally, but where it is void a collateral attack will prevail.

If we regard the sheriff's return as conclusive, then, of
course, the appellant has no right to make the question of
jurisdiction or no jurisdiction.   The case is, however, not
the ordinary one of a collateral attack upon the sheriff's re-
turn ; for two important elements are here present which are
absent from the cases holding the return conclusive :  One is
that it affirmatively appears that the defendant was not a
resident of the State; and the other that the return of ser-
vice was procured by the fraudulent act of the plaintiff.   In
*Wiley* v. *Pratt*, 23 Ind. 628, it is held that where it was
shown that the defendant was not a resident of this State the
return would not be treated as conclusive, and if that rule be
adhered to the case is with the appellant.   But we do not
deem it necessary to express an opinion upon that point; for
we think that the fraudulent act of the plaintiff (here the
appellee), in procuring a false return to be made, and in
fraudulently creating the appearance of jurisdiction, takes
the case out of the general rule.   It would be contrary to all
principle to allow a plaintiff to insist that a false return se-
cured by his own fraud should conclude his adversary from
asserting the truth.   It would be in direct violation of the
fundamental maxim that no man shall take advantage of his
own wrong.   Nothing can be more repugnant to one's sense
of justice than the proposition, that, although a man was a
resident of another State, still the sheriff's return, falsely
made and procured by fraud, estops him from showing that

he was not a resident of the State, and that no copy of the summons was left at his last and usual place of residence. Not only would the approval of the theory of appellee bring us into conflict with the elementary maxim we have referred to, but it would also bring us into opposition to the rudimentary rule that fraud vitiates everything.

Having reached the conclusion that the appellant is not concluded by the sheriff's return, the next question is, can he attack the judgment in the method adopted? It must be borne in mind that he does not stop short of an assault upon the jurisdiction. If he did, then, perhaps, he would be driven to make some other attack. If he establishes the position assumed, that there was no jurisdiction, then he proves the absolute nullity of the judgment; for it is settled that where there is no jurisdiction of the person no valid personal judgment can be rendered. *Beard* v. *Beard,* 21 Ind. 321; *Packard* v. *Mendenhall,* 42 Ind. 598. In the first of the cases cited, it was held that the Legislature might authorize the courts to grant a divorce upon notice by publication, but could not empower them to render a personal judgment for alimony upon such a service. We think it clear that one who shows that there was no jurisdiction is not driven to a direct attack, but may assail the judgment wherever it confronts him.

It is well settled that a judgment may be attacked for fraud, and that such an attack may be made in some of the methods established by the rules of equity, and need not be by a bill of review. *Nealis* v. *Dicks,* 72 Ind. 374; *Duchess of Kingston's Case,* 2 Smith Lead. Cases, 609; *Queen* v. *Saddlers' Co.,* 10 H. L. C. 404; *Webster* v. *Reid,* 11 How. U. S. 437; *Clark Douglass,* 62 Pa. St. 408; *Carpentier* v. *Hart,* 5 Cal. 406. Mr. Pomeroy, an author justly praised for his accuracy, says: "When a judgment fraudulently recovered in one court is sued upon in another court, whether the fraud can there be set up to defeat its enforcement has been questioned. There can be no doubt, however, that, under these circumstances, wherever

the reformed procedure prevails, the fraud may be set up by way of equitable defence, especially if the affirmative relief of cancellation is sought." 2 Pomeroy Eq. Juris., sec. 919. The case we have in hand does more than show fraud in obtaining the judgment, for it shows fraud in securing jurisdiction; and to such a case certainly the provisions of the statute respecting bills of review were never meant to apply, even if the unwarranted concession were made that they applied to cases where the judgment was obtained by fraud.

The remaining enquiry is whether the facts pleaded show that the court did not have jurisdiction of the person of the defendant. We are satisfied that they do show that jurisdiction of the person of the defendant was not acquired. We rest our opinion upon the ground that courts will not sanction any corrupt artifice or fraud in securing jurisdiction, much less uphold a judgment where there is nothing more than an appearance of jurisdiction, and that created by the fraudulent act of the plaintiff. In many cases it has been held that where the defendant is fraudulently enticed within the jurisdiction of the court, and process there served upon him, the courts will not sustain the service. *Townsend* v. *Smith*, 47 Wis. 623; S. C., 32 Am. R. 793; *Baker* v. *Wales*, 45 How. Pr. 137; *Goupil* v. *Simonson*, 3 Abb. Pr. 474; *Lagrave's Case*, 14 Abb. Pr. (N. S.) 331; *Carpenter* v. *Spooner*, 2 Sandf. 717. The act of so enticing a defendant is deemed a fraud, and courts will not support a fraudulent act, and will therefore decline to entertain jurisdiction of the person of the defendant. In *Dunlap* v. *Cody*, 31 Iowa, 260, it was held that fraud in enticing the defendant within the jurisdiction of the court constitutes a defence to the judgment. In *Wanzer* v. *Bright*, 52 Ill. 35, it was said: "It has been repeatedly held in this country that no court will take jurisdiction of a party where it is obtained by fraud." The English cases declare the same rule. *Stein* v. *Valkenhuysen*, 1 Ellis, B. & E. 65; *Grainger* v. *Hill*, 4 Bing. New Cases, 212. In *Stanton* v. *Crosby*, 9 Hun, 370, the court said: "It is true as a general rule that fraud, in

obtaining a judgment, can not be set up in a collateral proceeding by a party or one representing or in privity with him. But this rule only relates to fraud which involves the merits of the judgment. It does not govern the case of jurisdiction fraudulently attempted to be obtained." The case at bar is much stronger than any of those cited; for here there was not only no process served, but the defendant was not within the limits of the State when the service is asserted to have been made. There was a mere appearance of jurisdiction, and that appearance was created by the fraudulent act of the appellee, and she can not profit by it.

It is said by the appellee that a different rule prevails in divorce cases from that which obtains in ordinary civil actions. It is enough to say of this, that *Willman* v. *Willman,* 57 Ind. 500, is a case in which the questions are very similar to those in this, and that it was there held that a decree for divorce should be set aside if it appeared that jurisdiction of the person had not been acquired.

The second paragraph of the answer charges fraud in procuring the return of the sheriff, in stronger terms than the first, but is in legal effect the same. We think both paragraphs were good, and that the court erred in sustaining the demurrers to them.

The substance of the third paragraph of the answer is, that the appellants had no knowledge of the existence of the appellee's judgment. This answer is bad. A judgment defendant can not uphold a voluntary conveyance upon the sole ground that he had no knowledge of the existence of a valid judgment. In order to entitle a creditor to set aside a voluntary conveyance as fraudulent, he is not bound to show a corrupt motive or evil design. If the debtor has no other property out of which the claims of creditors can be satisfied, the law treats an attempt to make a gift of it as a constructive fraud, without any enquiry as to whether there was or was not any actual fraud. In declaring, as some of the cases do,

that the complainant in an action to set aside a fraudulent conveyance must show more than a voluntary act, it was not meant to hold that he must prove actual fraud, but that he must show the conveyance to have been without consideration, and that when made the grantor had not other property subject to execution, and, also, that he had no such property when the action was commenced.

The fifth paragraph of the answer is directed to so much of the complaint as seeks to set aside the alleged fraudulent conveyance, and alleges that the property was purchased with pension money awarded to the appellant Virgil P. Cavanaugh as a soldier in the war of the Rebellion. The appellant mainly relies on the following provision in the statute of the United States: "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner." R. S. U. S., sec. 4747. We have no hesitation in declaring that this provision does not extend to property purchased with money awarded the pensioner, and this is all the case requires us to decide. The view here expressed is supported by the cases of *Cranz* v. *White,* 27 Kan. 319 (41 Am. R. 408); *Webb* v. *Holt,* 57 Iowa, 712; and *Kellogg* v. *Waite,* 12 Allen, 529.

It is pushing analogy to an unreasonable length to affirm that pensions are protected, independently of statute, upon the same grounds as the salaries of public officers. The salaries of officers are protected from seizure in order to prevent the machinery of government from being stopped by a withdrawal of compensation from those charged with the administration of governmental affairs, and this reason (and reason is the life of all rules of law) can not extend to pensioners. But granting the legitimacy of the analogy, the rule protecting the salaries of officers from seizure does not extend to prop-

erty bought with money paid to the officer as salary, and thus the rule itself stops far short of the extent assigned it by appellants.

Judgment reversed.